**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| ELZIE S. RODGERS JR. | **)** | |
| (Plaintiff) | ) | CASE # _____ |
| | **)** | **JURY TRIAL DEMANDED** |
| **vs.** | ) | |
| JOHN HAMM, ALABAMA | ) | |
| DEPARTMENT OF CORRECTIONS | ) | |
| COMMISSIONER | ) | |
| DEBORAH CROOK | ) | |
| KENNETH PETERSON, WARDEN | ) | |
| G.K FOUNTAIN CORRECTIONAL | ) | |
| FACILITY | ) | |
| JAMES SMITH, LIEUTENANT | ) | |
| G.K.FOUNTAIN CORRECTIONAL | ) | |
| FACILITY | ) | |
| DEFENDANT UNKNOWN NURSE 1 | ) | |
| DEFENDANT UNKNOWN NURSE 2 | ) | |
| DEFENDANT UNKNOWN NURSE 3 | ) | |
| UNKNOWN HEALTHCARE GROUP | ) | |
| UNNAMED CORRECTIONAL OFFICERS 1-10 | ) | |
| UNNAMED CORRECTIONAL SUPERVISORS | ) | |
| 11-20 | ) | |
| UNNAMED MEDICAL CARE EMPLOYEES | ) | |
| 21-30 | ) | |
| UNNAMED MEDICAL CARE SUPERVISORS | ) | |
| 31-40 | ) | |
| (Defendants) | ) | |

**COMPLAINT**

I.  **INTRODUCTION**

1.  This is a civil rights action brought under 42 U.S.C. § 1983,  and state tort law to redress the

    deliberate indifference, medical mistreatment, and unlawful actions of Defendants, which

    caused severe harm to Plaintiff Elzie Rodgers

1

2. While incarcerated at Fountain Correctional Center, a correctional facility for the Alabama Department of Corrections (hereinafter "ADOC") Lieutenant James Smith was employed by ADOC, physically assaulted the Plaintiff and then assisted in the refusal and delay to get the Plaintiff medical treatment for six days.

3. The Plaintiff due to the initial injury and delay in treatment suffered a serious bodily injury that required he be admitted and spend numerous days in the Hospital.

4. The Plaintiff suffered with a fractured rib and a punctured lung, injuries sustained by Plaintiff after the assault at the hands of Lieutenant Smith.

5. This lawsuit seeks damages for the violations of Plaintiff's constitutional and statutory rights and his inhumane treatment while in the custody of ADOC.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because this action arises under federal law, including the Eighth and Fourteenth Amendments to the United States Constitution.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the events and omissions giving rise to this action occurred within this district.

## III. PARTIES

9. Plaintiff, Elzie S. Rodgers, Jr. (hereinafter "Plaintiff Rodgers")is a citizen of the United States and a resident of Ridge County, South Carolina. During the events described herein, Plaintiff was incarcerated at Fountain Correctional Center under the custody of ADOC.

10. Defendant John Q. Hamm is, and was at the time of all events described herein, the Commissioner of the ADOC. As such, Defendant Hamm is responsible for overseeing the administration of ADOC correctional facilities including Fountain Correctional Center.

11. Defendant Deborah Crook is, and was at the time of all events described herein, the Deputy Commissioner of Health Services at the ADOC. As such, Defendant Crook serves as the ADOC advisor to the Commissioner in matters relating to the administration and provision of health care services provided to incarcerated individuals in ADOC facilities. She is responsible for implementing, administering, and monitoring the provision of health care services and treatment programs for those incarcerated individuals assigned to the ADOC.

12. Defendant James Smith is (hereinafter "Lt. Smith"), and was at the time of all events described herein, a Lieutenant at Fountain Correctional Center. As such, Defendant Smith is responsible for the attack and injuries sustained by the Plaintiff. Defendant Smith is also responsible for managing the daily operations at Fountain Correctional Center, ensuring the safety and security of staff and incarcerated individuals. He is also responsible for implementing policies and procedures and ensuring that all activities comply with legal and institutional standards.

13. Defendant Unknown Nurse 1 is a registered nurse who provided psychiatric care to the inmates in the Crisis Cells to include Cell #1 and #2. This nurse would have been a witness to the assault of Plaintiff Rodgers.

14. Defendant Unknown Nurse 2 is a registered nurse who provided the first examination of Plaintiff Rodgers and would have prepared his body chart immediately after the assault in the prison. Her precise identity will be determined through Discovery.

15. Defendant Unknown Nurse 3 is a registered nurse who assisted with Plaintiff Rodgers' treatment while in the prison. Her precise identity will be determined through Discovery.

16. Unknown Healthcare Group is a provider of correctional healthcare to individuals incarcerated by ADOC. Its precise identity will be determined through Discovery.

17. Through discovery, the identities of the Unnamed Correctional Officers who were aware of the assault on the Plaintiff and his injuries and unconstitutional care, and failed to act reasonably to get him access to constitutionally adequate care, will be discerned.

18. Through discovery, the identities of the Unnamed Correctional Supervisors who knew of Plaintiff's injuries, unconstitutional care, and failed to act reasonably to get him access to constitutionally adequate care, will be discerned.

19. Through discovery, the identities of the Unnamed Medical Care Employees who knew of Plaintiff's serious health needs and failed to act reasonably to provide constitutionally adequate health care will be discerned.

20. Through discovery, the identities of the Unnamed Medical Care Employees Supervisors who knew of Plaintiff's serious health needs and failed to act reasonably to provide constitutionally adequate health care will be discerned.

21. All individual Defendants are sued in their individual and official capacities.

### IV. <u>FACTUAL ALLEGATIONS</u>

22. On January 18, 2024, Plaintiff Elzie Rodgers, Jr. at the time of the assault was in his prison cell with another inmate on suicide watch. The parties were located in the Crisis Cell #1.

23. The other inmate in the prison cell at the time, produced a razor blade and proceeded to cut himself in the arm while arguing with the mental health supervisor who was standing outside

4

of the prison cell. The inmate during the argument threw the razor out of the cell onto the floor. The inmate was very argumentative with the mental health supervisor.

24. Plaintiff Rodgers heard the mental health supervisor or some other facility employee call Lt. Smith on the radio to provide security and assistance in the matter. Lt. Smith also was dispatched to transfer Plaintiff Rodgers out of the prison cell because the status of the other inmate in the cell was upgraded from "Non-Acute" to "Constant Observation." The status change required the inmate to be in a "one-man" cell.

25. Lt. Smith arrived at the cell and ordered Plaintiff Rodgers to grab his blanket, mattress, and to relocate to Crisis Cell #2.

26. Plaintiff Rodgers complied and relocated to Crisis Cell #2.

27. Shortly after Plaintiff Rodgers relocated to Crisis Cell #2, Unknown Nurse 1 came to distribute the daily medications to the inmates on suicide watch.

28. Plaintiff Rodgers had taken the medications the day before, was aware of the routine and prepared to take the medications as usual.

29. The daily routine for the medication distribution is that the nurse gives the inmates their pills in their hand, she provides a cup to them with water so they can take the medications and the inmate takes the medication in front of the nurse. The nurse is watching the inmate during the entire process. No cups are allowed in the cells if you are on suicide watch.

30.  Plaintiff Rodgers as the day before accepted the pills in his hand but Unknown Nurse 1 did not give him a cup. Plaintiff Rodgers requested a cup from Unknown Nurse 1.

31. Unknown Nurse 1 knowing the protocol began to get Plaintiff Rodgers a cup so he could take his medication.

32. Lt. James was still in the area and looking visibly agitated came over to the cell where Plaintiff Rodgers was located, stepped into the Crisis Cell #2 doorway, got into the face of Plaintiff Rodgers and stated "Get it out of the fucking sink" and instructed Plaintiff Rodgers to put the pills in his mouth, stoop down into the sink and take the pills without a cup.

33. Plaintiff Rodgers responded by opening up his hand, showing Lt. Smith the number of pills in his hand, which was around 8 pills and replied by stating "I can't." Plaintiff Rodgers had previously tried to take his pills in this manner suggested by Lt. Smith and it resulted in pills falling out Plaintiff Rodgers mouth and falling into the sink.

34. Lt. Smith after hearing the response from Plaintiff Rodgers stated "Take them or I will beat your fucking ass."

35. Plaintiff Rodgers opened his mouth in an attempt to respond to Lt. Smith and before he could state a word, Lt. Smith punched him in his mouth, grabbed Plaintiff Rodgers by the throat and threw him back into the cell on the bed in the cell.

36. Lt. Smith proceeded to choke Plaintiff Rodgers and then started hitting Plaintiff Rodgers with his CB radio. Lt. Smith repeatedly struck Plaintiff Rodgers in the face with his CB radio.

37. These repeated strikes caused bruises and injuries to the left eyebrow and nose of Plaintiff Rodgers.

38. During the attack, Lt. Smith snatched Plaintiff Rodgers pulling him off the bed to bring him to the floor.

39. During the snatching and pulling, Lt. Smith flipped Plaintiff Rodgers and kneed him in his ribcage, on the right side.

40. The assault on Plaintiff Rodgers continued until another officer shouted and started pleading to Lt. Smith and stated "Come on Lou, Come on Lou, Come on man."

41. During the entire attack, Plaintiff Rodgers cried out in pain.

42. After the attack stopped, Plaintiff Rodgers was examined by Unknown Nurse 2, who created a body chart documenting the injuries sustained by Plaintiff Rodgers.

43. Plaintiff Rodgers during the initial examination cried out in pain and after being put back into his cell, due to the pain requested another nurse come to examine him.

44. Plaintiff Rodgers was examined by Unknown Nurse 3 and during the second examination he told Unknown Nurse 3 he felt his ribs were broken or fractured and asked for medical attention. Unknown Nurse 3 asserted based upon the blood pressure and other vitals, there was no internal bleeding. Unknown Nurse 3 did not call for additional medical personnel or order that Plaintiff Rodgers receive any additional treatment.

45. After the second examination, over the objections of Plaintiff Rodgers, he was returned to the Crisis Cell #2.

46. Plaintiff Rodgers complained about the excruciating pain repeatedly every day.

47. On January 20, 2024, Plaintiff Rodgers attempted to seek help from Warden Peters about his injuries.

48. Warden Peters was in the cell block and Plaintiff Rodgers attempted to speak with him.

49. Plaintiff Rodgers told Warden Peters that Lt. Smith attacked him and he wanted to file an emergency grievance. Warden Peters instructed Plaintiff Rodgers that "once he got out of there, [meaning the crisis unit,] he could file his grievance."

50. Plaintiff Rodgers was denied every attempt to file a grievance for the assault on him by Lt. Smith.

51. On January 23, 2024, Plaintiff Rodgers was removed from the Crisis #2 cell and taken to an exam room to have an x-ray examination performed.

52. The x-ray technician took the x-ray and after reviewing the x-ray requested Plaintiff Rodgers be transported immediately to the hospital.

53. The x-ray revealed a very serious injury and it required medical treatment.

54. Plaintiff Rodgers suffered from Pneumothorax on his right side, which means he had an air leak in the lungs.

55. Plaintiff Rodgers was hospitalized for numerous days due to the injuries sustained from the attack.

56.  Upon return to prison, Plaintiff Rodgers was denied essential rehabilitative care and was denied the ability to file any grievance against Lt. Smith.

57. Plaintiff Rodgers was denied the opportunity to file a grievance numerous times until February 12, 2024, almost a month after the incident.

Pattern of Unconstitutional Medical Care

58. In Braggs v. Dunn (2017) 257 F. Supp. 3d 1171, the Alabama Middle District Court held that the health care provided to the incarcerated plaintiff class was "horrendously inadequate" such that "the Commissioner of the Alabama Department of Corrections and the Associate Commissioner of Health Services, in their official capacities, are violating the Eighth Amendment rights of the plaintiff class." Braggs v. Dunn (2017) 257 F. Supp. 3d 1171, 1267 (M.D. Al. 2017). This included the court's finding of ADOC "[p]roviding insufficient out-of-cell time and treatment to those who need residential treatment; and failing to provide hospital-level care to those who need it." Id. at 1267. Additionally, the court found that "persistent and severe shortages" of health care and correctional staff "combined with chronic and significant overcrowding" contributed to this state of inadequate health care. Id. at 1268.

59. Specifically, in the original Class Action Complaint, filed more than ten years ago, the Plaintiffs alleged that "Prisoners with physical or mental disabilities face discriminatory and dangerous circumstances throughout the ADOC system. They are housed in facilities that cannot accommodate them... They are not provided with necessary assistive services or devices, such as functioning wheelchairs." Compl. <u>Braggs et al. v. Dunn et al.,</u> 2:14-cv-00601-MHT-TFM, Doc. 1 at 5. Additionally, the Plaintiffs alleged that "DEFENDANT ADOC has been and is aware of all the deprivations complained of herein, and has condoned or been deliberately indifferent to such conduct" in violation of the Americans with Disabilities Act 1990 and the Rehabilitation Act of 1973. <u>Id.</u> at 405.

60. Given that the litigation in <u>Braggs</u> began more than ten years ago, and the court found a constitutional violation eight years ago, it is simply impossible that Commissioner Hamm was unaware of the fact that he was overseeing correctional facilities in which the health care was constitutionally inadequate. Commissioner Hamm knew that the medical care provided to incarcerated individuals, including Plaintiff Rodgers, was constitutionally inadequate.

61. As a result of the events made the basis of this Complaint, Plaintiff has the following injuries:

    a. suffered physical injuries manifesting from Defendants' outrageous and intentional conduct

    b. suffered emotional and physical pain and will continue to do so in the future

    c. suffered mental anguish and will continue to do so in the future

    d. suffered permanent injuries and damage damages;

    e. endured loss of income;

    f. incurred medical expenses and will continue do so in the future

    g. have been otherwise injured and damaged.

## COUNT I: EXCESSIVE FORCE

## (FOURTH AMENDMENT-42 U.S.C. §1983)

*(Against Defendants James Smith, Unnamed Correctional Officers 1-10, Unnamed Correctional Supervisors 11-20,)*

62. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 22-61.

63. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

64. Defendant Lt. Smith and Unnamed Correctional Officers, jointly and severally, deprived Plaintiff Rodgers of clearly established rights secured to him under the United States Constitution— specifically the Fourth Amendment rights to be free from the use of excessive force against one's person.

65. Defendant Lt. Smith's excessive use of force in brutally beating Plaintiff Rodgers with a CB radio and using his fists was grossly unreasonable. The application of force by Lt. Smith was grossly disproportionate based upon the circumstances because Plaintiff Rodgers was simply trying to explain why he needed a cup to take his medication; he posed no threat or danger to Lt. Smith or anyone else. He was not creating any safety issues or inciting any violence.

66. Defendant Unnamed Correctional Officers were present at the scene of the violation of Plaintiff Rodgers constitutional rights. They witnessed the use of excessive force by Lt. Smith against Plaintiff Rodgers. Though they had a reasonable opportunity to intervene in order to prevent or mitigate injury to Plaintiff Rodgers, they chose not to.

67. Defendant Unnamed Correctional Officers failed to take any action to prevent harm to Plaintiff Rodgers and thereby approximately caused excessive force to be inflicted upon Plaintiff Rodgers that resulted in a constitutionally-actionable injury. Defendant Unnamed Correctional Officers are jointly and severally liable along with Lt. Smith for Plaintiff Rodgers' injuries.

68. Any reasonable correctional officer in the position of Lt. Smith or Defendant Unnamed Correctional Officers would have known that the force being used against Plaintiff Rodgers was unconstitutional.

69. Any reasonable correctional officer in the position of Lt. Smith or Defendant Unnamed Correctional Officers would have known that they had a duty to take reasonable measures to prevent harm to Plaintiff Rodgers.

70. Defendants' conduct resulted in physical injury to Plaintiff Rodgers. It severely injured Plaintiff Rodgers requiring life sustaining treatment in the hospital.  As a result, he is no longer able to engage in normal employment and has multiple limitations

71. Defendants' conduct also resulted in psychological injury to Plaintiff Rodgers Since his arrest, Plaintiff Rodgers has experienced emotional and psychological injuries, including mental anguish, humiliation, emotional distress, loss of enjoyment of life, and other non-pecuniary losses.

72. Defendants' conduct was the moving force and the proximate and producing cause of the aforementioned injuries.

73. Due to the injuries suffered by Plaintiff Rodgers, he is entitled to compensatory, economic, and consequential damages, in amounts to be determined at trial. As a further result of Defendants' unlawful conduct, Plaintiff Rodgers has incurred special damages, including expenses related

to the disability caused by his injuries. He may continue to incur other expenses and other special damages, in amounts to be established at trial.

74. Plaintiff Rodgers is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

75. In depriving Plaintiff Rodgers of his rights under the United States Constitution, Defendant Lt. Smith and Unnamed Correctional Officers acted under color of law in their respective capacities as correctional officers, and their actions and omissions were conducted within the scope of their respective official duties or employment. This deprivation under color of law is actionable and may be redressed by 42 U.S.C. § 1983.

**WHEREFORE**, premises considered, Plaintiff demands judgment against Defendants separately and severally, in such amount of compensatory and punitive damages as a court deems proper, attorney's fees, costs, and such other, more general and equitable relief as is deemed proper by the Court.

## COUNT II: DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

### (EIGHTH AMENDMENT - 42 U.S.C. § 1983)

*(Against Defendants John Q. Hamm, Deborah Cook, Kenneth Peters, James Smith, Unnamed Correctional Officers 1-10, Unnamed Correctional Supervisors 11-20, Unnamed Medical Care Employees 21-30, Unnamed Medical Care Supervisors 31-40)*

76. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 22-75.

77. Defendants exhibited deliberate indifference to Plaintiff's serious medical needs by failing to provide adequate medical care after he was brutally assaulted by Lt. Smith.

78. Defendant Hamm exhibited deliberate indifference to Plaintiff's serious medical needs. In light of the Braggs v. Dunn litigation and court findings, Defendant Hamm had subjective knowledge of systemic deficiencies in the healthcare provided to individuals incarcerated by

ADOC and the consequent risk of harm to Plaintiff. Nevertheless, he disregarded the risk of harm or failed to act reasonably to alleviate it by failing to implement and enforce policies and procedures to ensure correctional healthcare services were constitutionally adequate.

79. Defendant Crook exhibited deliberate indifference to Plaintiff's serious medical needs through both her direct failure to intervene when made aware of Plaintiff's condition, and for her supervisory failure to implement policies ensuring adequate medical care and accommodations for incarcerated individuals. Plaintiff's

80. Defendant Peters exhibited deliberate indifference to Plaintiff's serious medical needs. Based upon his brutal attack on Plaintiff Rodgers, Defendant Peters observed the pain and injury to Plaintiff Rodgers. Defendant Peters failed to take reasonable corrective measures to provide Plaintiff with adequate healthcare. Defendant Peters also exhibited deliberate indifference through his failure to ensure staff were properly trained and equipped to appropriately respond to Plaintiff's needs.

81. Defendant Unknown Nurse 1 knew of Plaintiff's visible disabilities and resulting serious medical needs due to her direct contact with Plaintiff. She nonetheless failed to take reasonable measures to provide him with constitutionally adequate healthcare.

82. Defendant Unknown Nurse 2 knew of Plaintiff's visible disabilities and resulting serious medical needs due to her direct contact with Plaintiff. She nonetheless failed to take reasonable measures to provide him with constitutionally adequate healthcare.

83. Defendant Unknown Nurse 3 knew of Plaintiff's visible disabilities and resulting serious medical needs due to her direct contact with Plaintiff. She nonetheless failed to take reasonable measures to provide him with constitutionally adequate healthcare.

84. Unknown Healthcare Group exhibited deliberate indifference to Plaintiff's serious medical needs through its supervisory failure to establish and enforce procedures and training for its employees to ensure that incarcerated individuals received constitutionally adequate care while in ADOC custody.

85. Unnamed Correctional Officers exhibited deliberate indifference to Plaintiff's serious medical needs. Despite observing Plaintiff's injuries from a brutal attack and resulting health needs and being in a position to act, they nonetheless failed to act in a reasonable manner to mitigate the risk of serious harm to Plaintiff.

86. Unnamed Correctional Officers exhibited deliberate indifference to Plaintiff's serious medical needs. Despite having direct knowledge of Plaintiff's constitutionally inadequate care, and being in a position to act, they failed to act in a reasonable manner to mitigate the risk of serious harm to Plaintiff.

87. Correctional Supervisors exhibited deliberate indifference to Plaintiff's serious medical needs. Despite observing Plaintiff's injuries from a brutal attack and resulting health needs and being in a position to act, they nonetheless failed to act in a reasonable manner to mitigate the risk of serious harm to Plaintiff. They also failed to institute and enforce policies and training to Correctional Officers to ensure that incarcerated individuals received constitutionally adequate healthcare.

88. Unnamed Medical Care Employees, including the doctor assigned to oversee Plaintiff's medical care, and any nurses responsible for Plaintiff's medical care, exhibited deliberate indifference to Plaintiff's serious medical needs. Despite having subjective knowledge of Plaintiff's serious medical needs, they failed to act in a reasonable manner to provide constitutionally adequate medical care.

14

89. Unnamed Medical Care Supervisors exhibited deliberate indifference to Plaintiff's serious medical needs through their direct failure to act in a reasonable manner to provide constitutionally adequate medical care, and for their supervisory failure to ensure that Unknown Healthcare Group employees who encountered Plaintiff were properly trained to provide appropriate and constitutionally adequate health care.

90. Defendants' deliberate indifference caused Plaintiff unnecessary pain, suffering, and permanent physical disability, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

91. As a result of Defendants' constitutional violations, Plaintiff was injured and damaged as stated in paragraph 58 above.

**WHEREFORE**, premises considered, Plaintiff demands judgment against Defendants separately and severally, in such amount of compensatory and punitive damages as a court deems proper, attorney's fees, costs, and such other, more general and equitable relief as is deemed proper by the Court.

## COUNT III: ASSAULT, BATTERY

*(Against Defendants James Smith, Unnamed Correctional Officers 1-10, Unnamed Correctional Supervisors 11-20,)*

92. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 22-91.

93. Plaintiff asserts Defendant Lt. Smith by intentionally and repeatedly striking Plaintiff Rodgers with a CB radio and fists.

94. Plaintiff asserts Defendants Unnamed Correctional Officers engaged in conduct that was harmful and offensive. Despite having direct knowledge of Plaintiff's assault and battery at the

hands of Lt. Smith, and being in a position to act, they failed to act in a reasonable manner to mitigate the risk of serious harm to Plaintiff Rodgers.

95. The acts or omissions of these Defendants, as described herein, deprived Plaintiff of his rights under Alabama law and caused him the injuries and damages described in this Complaint.

**WHEREFORE**, premises considered, Plaintiff Rodgers demands judgment against Defendants separately and severally, in such amount of compensatory and punitive damages as a court deems proper, attorney's fees, costs, and such other, more general and equitable relief as is deemed proper by the Court.

## COUNT IV: WANTONNESS (ALA. CODE § 6-11-20)

### *(Against All Defendants)*

96. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 22-95.

97. Defendants failed to provide Plaintiff Rodgers with adequate treatment after the brutal assault at the hands of Lt. Smith as well as failing to provide adequate necessary rehabilitative care, therapy or other reasonable accommodations upon returning to the correctional facility.

98. Defendants committed acts of wantonness when they failed to provide Plaintiff with basic healthcare after being brutally beaten by Lt. Smith. Defendants were aware that Plaintiff had just been assaulted by Lt. Smith yet they took no meaningful steps to ensure he received appropriate healthcare. Their failure to respond to Plaintiff's medical and basic needs demonstrates a reckless indifference that rises to the level of wantonness under the law.

99. Therefore, Defendants' repeated failures to intervene constitute wantonness and wilfulness for which they can be liable.

100.    Defendants owed a duty of care to provide for the health, safety and welfare of Plaintiff Rodgers whilst in custody. By failing to give adequate healthcare to Plaintiff Rodgers, Defendants breached this duty and acted with wanton disregard for Plaintiff's health and safety.

101.    As a direct result of Defendants' actions, Plaintiff was injured and damaged as stated in paragraph 61 above.

**WHEREFORE**, premises considered, Plaintiff Rodgers demands judgment against Defendants separately and severally, in such amount of compensatory and punitive damages as a court deems proper, attorney's fees, costs, and such other, more general and equitable relief as is deemed proper by the Court.

### COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

102.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 22-101.

103.    Plaintiff asserts violations of Alabama law relative to intentional torts by Defendants Lt. Smith.

104.    Defendant acted intentionally, as described herein, to deprive Plaintiff of his rights under Alabama state law and caused him the injuries and damages described in this Complaint.

105.    As a direct and proximate result of the intentional acts of Defendant Lt. Smith described herein Plaintiff Rodgers has experienced additional emotional and psychological injuries—including mental anguish, humiliation, emotional distress, loss of enjoyment of life, and other non-pecuniary losses. Due to the traumatic nature of the event and the injuries he suffered, Plaintiff Rodgers has begun taking additional mental health drugs due to the incident.

106.    Defendant Lt. Smith engaged in extreme and outrageous conduct, and acted maliciously and with specific intent to harm Plaintiff Rodgers with reckless disregard for the consequences of their actions and omissions.

**WHEREFORE**, premises considered, Plaintiff Rodgers demands judgment against Defendants separately and severally, in such amount of compensatory and punitive damages as a court deems proper, attorney's fees, costs, and such other, more general and equitable relief as is deemed proper by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rodgers respectfully requests that this Court:

(a) Declare that Defendants violated Plaintiff's constitutional and statutory rights;

(b) Award compensatory damages for Plaintiff's physical and emotional suffering;

(c) Award punitive damages to deter future misconduct by Defendants;

(d) Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

(e) Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

/s/ Tamika R. Miller
TAMIKA R. MILLER (MIL149)
Attorney for the Plaintiff, Elzie Rodgers, Jr.
The Miller Law Group, LLC
445 Dexter Ave. Suite 4050 Montgomery, AL 36104
Phone: (334) 625-6959
Fax: (334) 513-8686
E-mail: tamika@themillerlgroup.com

18

## CERTIFICATE OF SERVICE

I hereby certify this complaint was served on Defendants via certified mail on this 20th day of January, 2026:

/s/ Tamika R. Miller

**TAMIKA R. MILLER**